(C.D. 2204)

RAMBUSH DECORATING CO.
GENERAL SHIPPING & TRADING CO. } *v.* UNITED STATES

United States Customs Court, First Division

(Decided October 4, 1960)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Paul J. Gavin* of counsel) for the plaintiffs.

*George Cochran Doub*, Assistant Attorney General (*Mollie Strum*, trial attorney), for the defendant.

Before OLIVER, MOLLISON, and WILSON, Judges

MOLLISON, Judge: The merchandise the subject of this protest is described on the invoice as a "Reredos" and was assessed with duty at the rate of 25 per centum ad valorem under the provision in paragraph 232(d) of the Tariff Act of 1930, as modified by T.D. 51802, for—

Marble, breccia, and onyx, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or any of them is the component material of chief value, not specially provided for.

The protest claim is for free entry of the reredos under the provision in paragraph 1774 of the same act, as amended by the act of June 12, 1952, 66 Stat. 137, for—

Altars, pulpits, communion tables, baptismal fonts, shrines, or parts of any of the foregoing, and statuary (except casts of plaster of paris, or of compositions of paper or papier-mâché), imported in good faith for the use of, either by order of or for presentation (without charge) to, any corporation or association organized and operated exclusively for religious purposes.

There is no issue on the matter of the reredos at bar having been imported in good faith for the use of, either by order of or for presentation without charge to, a corporation or association organized and operated exclusively for religious purposes. Plaintiffs' position is that the reredos at bar is a part of an altar or of a shrine within the meaning of paragraph 1774, *supra*, while defendant contends that it is not.

The evidence consists of the oral testimony of the man who planned and installed the entire high altar assembly, including the subject reredos, in the Roman Catholic Cathedral of St. Raphael in Madison, Wis., and a photograph of the installation received in evidence as plaintiffs' illustrative exhibit 1.

From an examination of the record and of illustrative exhibit 1, the reredos at bar appears to be a decorative, wall-like affair, made of marble, in the center of which there is a large mosiac panel depicting a religious scene.

The photograph shows that the complete installation consists of (1) what is known as a predella, or altar steps culminating in a raised platform, (2) what has been termed the "altar proper," (3) the reredos, and (4) a large rectangular canopy, called a baldachino, which is supported high over the already described portions of the assembly by two long columns in the front and in the back by brackets which are attached to the upper part of the reredos. Some parts of the installation were imported, while others were made domestically. The present case involves only the dutiable status of the reredos.

The altar proper is located approximately in the center of the predella and consists of a table-like structure resting on four columns or legs and what appears to be a block of light-colored marble in the center, together with a rectangular structure of dark, mottled marble immediately behind the table, and on which candlesticks, a tabernacle, and other altar appurtenances are shown in the photograph.

The reredos rests on the rear of the predella, 30 inches behind the altar proper. Between the altar proper and the reredos, there is a platform with steps going down either way, and, while the purpose of this platform was not explained in the record, it is probable that it is used when the altar furnishings are being serviced or replaced.

Although the record is not very clear on the point, it does not appear that the reredos is attached to or forms any part of the rear wall of the sanctuary or of the cathedral. In other words, it appears to be resting on its own base at the rear part of the predella. Aside from

its decorative function, it forms the rear support of the canopy or baldachino.

The altar in connection with which the reredos was imported is the high altar of the cathedral in which it was installed. There does not appear to be any dispute but that a reredos is not, from a liturgical standpoint, an essential part of an altar under the laws of the Roman Catholic Church, that is to say, the ceremonies prescribed by that Church to take place at or before an altar may be performed at or before an altar which does not have a reredos. However, it does appear that, according to the laws of that Church, a high altar must have a canopy or baldachino in order to be complete.

The testimony of the designer and installer of the entire assembly is that he planned the canopy to rest on the reredos and on the two columns, for which reason the reredos was essential to the completion of the design.

The question of what are *parts of* altars or shrines, which, in turn, is bound up in the question of what are altars or shrines, has been before this and our appellate court many times. It was pointed out by the predecessor of our appellate court in *Daprato Statuary Co.* v. *United States*, 16 Ct. Cust. Appls. 233, 235, T.D. 42840, that those terms had both broad and narrow senses, but the court concluded that—

\* \* \* the terms "altar" and "shrine" were used by Congress in a restricted and strictly religious sense.

The phrase, "in a restricted and strictly religious sense," could, of course, be interpreted as limiting altars and shrines in a tariff sense to those which were such by the laws of the churches or sects in whose behalf importations might be made.

However, in a later case, involving a different importation, viz, *Daprato Statuary Co.* v. *United States*, 26 C.C.P.A. (Customs) 173, 178, C.A.D. 13, our appellate court indicated that this was not so, saying:

The question before us, however, is not what constitutes an altar from a canonical point of view, but rather whether the reredos, of which the involved articles are constituent parts, is an integral, constituent, or component part of an altar in a tariff sense; \* \* \*.

With these observations in mind, in a comparatively recent case, *Bernardini Studios* v. *United States*, 39 Cust. Ct. 281, C.D. 1942, involving an importation of a reredos claimed to be part of an altar, we said:

It has been pointed out in past decisions that the question is not what in a canonical or liturgical sense is an altar. Congress presumably used the term in the common acceptation thereof. Viewed in that light, we think it is a matter of common knowledge that when an ordinary person, whether he be a visitor, communicant, or member of the congregation, enters a church, synagogue, tem-

ple, or other edifice of a religious nature where an altar may be found, and views the structure which is generally raised and is the central or focal point for the services conducted in that place, he regards the entire ensemble of what he sees as an altar. The rather technical points of whether the parts of the entity bear individual names, such as predella, table, retable, or reredos, as in this case, are known to comparatively few persons, other than ecclesiastical experts, and certainly are not part of the common knowledge or speech of the average layman.

As an example of this fact, in three of the dictionaries contained in the court's library, there are illustrations in connection with the text of the definition of the noun "altar." In the Century Dictionary and Cyclopedia (1889) and the New Century Dictionary (1946), there is a representation of the high altar of the Cathedral of Notre Dame, Paris, and, in Funk & Wagnalls New Standard Dictionary (1942), there is a representation of the high altar of the Cathedral of Clermont-Ferraud, France. Each of these illustrations shows not only the table and predella, but also the retable and reredos, and demonstrates, we think, what in common speech may be regarded as one form of an altar.

Our decision in the *Bernardini* case, holding the reredos there involved to be part of an altar, was not appealed, and, in the brief filed in its behalf in this case, plaintiffs rely strongly upon the foregoing language.

On the other hand, in the brief filed on behalf of the defendant by its counsel, it is urged that the reredos involved in the *Bernardini* case was unlike the reredos in the case at bar, principally on the ground that the former "was physically attached."

The description contained in our opinion of the reredos in the *Bernardini* case shows that it rested on the retable, rather than on the predella, as in the case at bar, but also shows that the retable and reredos rested on the predella in back of the mensa or table, and that there was no other physical or structural connection between the table and retable.

However, as we indicated in our opinion in the *Bernardini* case, *supra*, physical or structural attachment or connection is not a *sine qua non* of a "part of" an article in a tariff sense. A part may be an integral, constituent, or component element of an article without being physically joined or attached thereto. Note the decision of our appellate court in the case of *Steel, Inc.* v. *United States*, 24 C.C.P.A. (Customs) 423, T.D. 48872, cited and quoted in our opinion in the *Bernardini* case. We may observe, as an analogy, that the trousers and jacket of a man's suit are integral, constituent, or component parts of the suit, but are not physically joined or attached together.

In its decision in the second *Daprato* case, *supra*, our appellate court affirmed the holding of this court that the reredos and altar there involved were "separate and independent entities." We are of the opinion that, in so doing, the court was not using those words as holding that articles physically separated from each other could not, for that reason alone, be parts of a single tariff entity, but, rather, was holding

that the altar and reredos there involved each was a separate article, complete in itself, designed to be used with the other, but not essential to the proper function of the other.

We are not unmindful of the fact that in a recent case, viz, *United States* v. *Buck's, Inc.*, 47 C.C.P.A. (Customs) 12, C.A.D. 721, our appellate court reversed a decision of this court holding, on the authority of our decision in the *Bernardini* case, that certain altar niches were entitled to free entry under the provision for parts of altars. As we read the decision, however, our appellate court was in disagreement with our view that the situation in the *Buck's, Inc.*, case was controlled by our decision in the *Bernardini* case, and expressed neither approval nor disapproval of the principles upon which the *Bernardini* case was decided.

The well-settled rule as to tariff provisions containing a designation for "parts of" articles is that—

* * * a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* [Italics quoted; *United States* v. *Willoughby Camera Stores, Inc.*, 21 C.C.P.A. (Customs) 322, T.D. 46851.]

We think this rule must be understood as relating as well to parts which have a decorative function as to those which have a utilitarian function. *Berg Importing Co. et al.* v. *United States*, 32 Cust. Ct. 210, C.D. 1604.

In the case at bar, the testimonial record, as well as an examination of the photograph, illustrative exhibit 1, establishes that the entire assembly, including the predella, altar proper, reredos, and baldachino, was designed for and used as a unit as the high altar of a cathedral. In that unit, the reredos has a decorative function and also has a utilitarian function, the latter as the necessary rear support of the baldachino, shown to be required for the completion of a high altar.

For these reasons, we conclude that the subject reredos is a part of an altar within the meaning of the term, as used in paragraph 1774, *supra*, and sustain the protest claim for free entry thereunder.

Judgment will issue accordingly.